# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

**RANDALL PHILLIPS d/b/a VOLUNTEER PROPERTIES,**

    **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　　　Civil Action No. _____

**NATIONAL SURETY CORPORATION,**　　　**JURY DEMANDED**

    **Defendant.**

## COMPLAINT

COMES NOW the Plaintiff, Randall Phillips d/b/a Volunteer Properties, by and through counsel, and for his claims against National Surety Corporation would respectfully state and show as follows:

### PARTIES AND JURISDICTION

1.　　Randal Phillips is a resident of Sumner County, Tennessee, and is the sole owner of Volunteer Properties, a sole proprietorship which owns Piccadilly Apartments at Windsor Green ("Piccadilly Apartments"). Randall Phillips d/b/a Volunteer Properties shall be referred to hereafter as "Volunteer Properties." Piccadilly Apartments is a residential apartment complex located at or about 500 Windsor Green Blvd., Goodlettsville, Tennessee (the "Insured Premises").

2.　　National Surety Corporation ("National Surety") is a foreign corporation engaged in the business of insurance in the State of Tennessee, with its principal office located in Chicago, Illinois.

3. This Complaint originates as the result of a storm that severely damaged the exteriors and interiors of the structures located on the Insured Premises, and National Surety's unlawful actions as follows: (1) National Surety's partial denial of Volunteer Properties' claim for insurance proceeds; (2) National Surety's refusal to submit portions of Volunteer Properties' claim for insurance proceeds to the appraisal process as required by the insurance policy at issue; and (3) National Surety's refusal to honor a valid appraisal award that was issued by a duly appointed appraisal panel. This Court has jurisdiction of the subject matter in that the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different states. Venue is proper in this Court in that the events giving rise to this action occurred in Sumner County.

## FACTS

4. At all times material hereto, Volunteer Properties was an insured in an insurance contract whereby National Surety agreed to insure the Insured Premises against property damage, being Policy No. S 59 MXX 80911052 (the "Policy"). The Policy is incorporated herein by reference as if set forth verbatim. As relevant hereto, the term of the policy was September 1, 2009 through September 1, 2010, together with any and all renewals thereof.

5. At all times relevant hereto, the Insured Premises consisted of numerous residential apartment buildings containing multiple residential units, and surrounding areas.

6. The Policy was a blanket insurance policy that provided insurance coverage for property damage at multiple locations, including loss or damage to the Insured Premises. The Policy is an "all risk" policy, which means that it provides insurance coverage for all direct physical loss or damage to covered property unless the loss is specifically excluded or limited in the Policy.

7. The Policy's coverage for the buildings and structures on the Insured Premises was on a "replacement cost" valuation basis, which means that coverage is provided on a replacement cost basis without deduction for depreciation.

8. Pursuant to the Policy, Volunteer Properties paid a premium to National Surety in exchange for insurance coverage. Volunteer Properties paid the required premium at all times relevant to this Complaint.

9. On or around May 2, 2010, a severe windstorm struck the Insured Premises, causing substantial wind and water damage to buildings and structures located on the Insured Premises (the "Loss"). As a result of the Loss, the buildings and structures located on the Insured Premises suffered immediate and direct physical loss, including but not limited to damage to the roofs, exteriors, and interiors.

10. The Policy was in effect at the time of the Loss, and the Loss is a compensable claim under the terms of the Policy. As it relates to the Loss, there is no applicable exclusion.

11. The Loss was promptly reported to National Surety.

12. Volunteer Properties fulfilled all of the duties after the Loss that were imposed upon it by the Policy.

13. National Surety admitted and represented to Volunteer Properties that the Loss was a compensable claim, and paid a portion of Volunteer Properties' claim.

14. A dispute arose between Volunteer Properties and National Surety as to the amount of the Loss.

15. On July 26, 2011, Volunteer Properties demanded appraisal pursuant to the appraisal provision of the Policy. Specifically, the Policy provides:

Appraisal

3

Case 3:14-cv-00653   Document 1   Filed 03/10/14   Page 3 of 11 PageID #: 3

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> a. Pay its chosen appraiser; and
> b. Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

16. National Surety failed to respond to the appraisal demand, and a follow-up letter was sent to National Surety on August 16, 2011. National Surety ignored that letter as well, and a follow-up email was sent by Volunteer Properties to National Surety on September 7, 2011. Finally, by letter dated September 13, 2011, National Surety responded to the appraisal demand with a rejection of the appraisal demand on the basis that the written appraisal demand came from Volunteer Properties' appointed appraiser, Chuck Howarth, rather than Volunteer Properties. Accordingly, on September 21, 2011, Volunteer Properties reiterated its prior demands for appraisal by a letter from its owner, Randall Phillips.

17. By letter dated September 27, 2011, National Surety appointed Brian Roberts as its appraiser. The appraisers chose John Voelpel as the umpire pursuant to the appraisal provision of the Policy.

18. During the appraisal process, a dispute arose between the appraisers concerning the proper scope of the appraisal. Volunteer Properties and its appraiser, Chuck Howarth, contended the appraisal should include the loss in full and in all aspects, including both exterior roofing as well as interior water damages that resulted to some of the units. On the other hand, National Surety's appraiser advised that he was instructed by his client, National Surety, to only

4

appraise the exterior roofing damage, and not interior damage. As a result of the dispute, and in the interest of efficiency, the appraisers ultimately agreed to issue an Appraisal Award for only the roofing damage, leaving the interior water loss as an open item.

19. An Appraisal Award was made on December 28, 2011. The Appraisal Award was signed by both parties' appraisers, Chuck Howarth and Brian Roberts. Because the appraisers reached an agreement, the umpire was not involved. A copy of the Appraisal Award is attached hereto as **Exhibit "A"**.

20. The Appraisal Award provided, in relevant part, as follows:

Claim #: 005-11-840769

We, the undersigned, pursuant to the within appointment, **DO HEREBY CERTIFY** that we have truly and conscientiously performed the duties assigned to us, agreeable to the foregoing stipulations, and have appraised and determined and do hereby award as to the amount of loss to the roofs from a windstorm which occurred on May 2, 2010 the following sums to wit:

| | |
|---|---|
| Roofing Loss at RCV (not including O&P) | $ 859,968.73 |
| Depreciation | $ 171,993.73 |
| Roofing Loss at ACV (not including O&P) | $ 687,975.00 |
| O&P | $ 171,993.73 |

(This Award is subject to any prior payments, applicable deductible and applicable industry standards related to payment of O&P. The standard referred to here is that O&P is payable only if same contractor performs 3 trades or more for repairs directly related to this loss. If insured's contractor performs 3 or more trades repairing damages from this occurrence then the RCV Award total is $1,031,962.46 and the ACV Award is $859,968.73. The Award totals above do not include any determination for code upgrades, lead abatement or any consideration of interior water damages related to this occurrence.)

Witness our hands this 28th day of December 2011:



Chuck Howarth - Appraiser          Brian Roberts – Appraiser

21. As can be seen from the plain language of the Appraisal Award, it did not include any consideration of interior water damages relating to the Loss, but rather left that item open. Further, the Appraisal Award made clear that if Volunteer Properties' contractor performs three or more trades repairing damages from the Loss, then overhead and profit should be paid,

5

resulting in a replacement cost value for the roofing loss in the amount of $1,031,962.46 and an actual cash value for the roofing loss in the amount of $859,968.73.

22. The amount of the Loss for the damage to the roof, as set by the Appraisal Award, is binding on the parties, but the Appraisal Award expressly did not include interior water damage, code upgrades, and lead abatement.

23. By email dated on or about January 18, 2012, after receipt of the Appraisal Award, Volunteer Properties reiterated to National Surety its prior and present intention that the appraisal process would determine the amount of the loss in full and in all aspects, including both exterior roofing as well as interior water damages that resulted to some of the units. National Surety responded that it desired to conduct a reinspection of the interior damage, and also indicated that it was not in agreement with the Appraisal Award.

24. Thereafter, on or about February 3, 2012, Volunteer Properties submitted a proof of loss for the roofing damage to National Surety in an amount consistent with the Appraisal Award. Specifically, the February 3, 2012 roofing proof of loss was for $1,031,962.46 replacement cost value and $859,968.73 actual cash value.

25. By letter dated February 17, 2012, National Surety advised that it would not honor Volunteer Properties' appraisal demand for the interior damage resulting from the Loss because "the claim has never been properly submitted and the damaged units [were not] made available for inspection." National Surety's statements were untrue. National Surety's representatives were advised of the interior damage on numerous occasions, and National Surety was allowed to inspect whatever portion of the Insured Premises that it wished to inspect.

26. On February 22, 2012, National Surety sent a letter to Volunteer Properties, and advised that National Surety would honor the Appraisal Award. Thereafter, National Surety sent

a check to Volunteer Properties in the amount of $677,975.00 with a memo on the check that stated "Payment for Actual Cash Value Building Claim."

27. By letter dated March 8, 2012, Volunteer Properties responded to National Surety and advised that it was not in agreement that the advance would act as payment in full or satisfaction of the claim. Specifically, Volunteer Properties advised "the check appears to be only an advance payment on our claim of the ACV roof appraisal Award without O&P less $10,000 which we conclude to be our deductible." Volunteer Properties advised that it would proceed with depositing the $677,975.00 check as an advance unless there was some objection to that by National Surety within five days. There was no such objection. Volunteer Properties also reiterated to National Surety that there were other damages that were not included in the Appraisal Award, specifically the interior damage. Volunteer Properties invited National Surety to inspect the interior damage if it so desired.

28. Volunteer Properties advised National Surety that its failure to include overhead and profit in its payment of the actual cash value of the Appraisal Award was improper. The work performed by Volunteer Properties' general contractor as a result of the Loss involved three or more trades.

29. The damage to the Insured Premises that was caused by the Loss, both interior and exterior, required three or more trades to repair. Further, the roofing job itself was so substantial and of such importance that a reasonable person would be expected to utilize the services of a general contractor. The project was complex, requiring multiple trades and intensive supervision and management. Volunteer Properties did in fact engage a general contractor to oversee the entire project, the scope of which included more three or more trades. Volunteer Properties was, and is, entitled to payment of overhead and profit.

30. On April 9, 2012, National Surety advised Volunteer Properties that it was allowed to present a supplemental claim for replacement cost to the roof. National Surety further stated to Volunteer Properties that it would not consider or pay any interior damages unless a "new claim for interior damages" was presented.

31. On June 26, 2012, after the repairs to the roofing damage were accomplished, Volunteer Properties submitted to National Surety an invoice from Summit Restoration for the roofing repairs, and demanded payment of the balance of the Appraisal Award for the roof damages, which totaled $1,031,962.46. Volunteer Properties also submitted an invoice from Summit Restoration for temporary roof patching and interior drywall and painting repairs which were incurred to mitigate damage and to protect the Insured Premises from further damage. The invoice for the temporary repairs and mitigation costs totaled $29,230.84. Finally, Volunteer Properties also submitted to National Surety an estimate from Summit Restoration for the interior repairs that were still needed as a result of the Loss, totaling $27,809.59.

32. On September 26, 2012, having received no response from National Surety to the June 26, 2012 submission, Volunteer Properties sent another letter requesting payment for the balance due on the claim. A final proof of loss was also submitted seeking a total supplemental payment of $411,027.90, which included interior repairs, recovery of depreciation on the roofing loss, overhead and profit, and temporary repairs. Volunteer Properties requested that National Surety either honor the claim in full, or otherwise pay any undisputed amounts and that National Surety notify its appraiser, Brian Roberts, that he should proceed with an appraisal on the remaining disputes.

33. On October 10, 2012, National Surety finally responded to Volunteer Properties and rejected the supplemental proof of loss. However, National Surety acknowledged that the

8

Case 3:14-cv-00653   Document 1   Filed 03/10/14   Page 8 of 11 PageID #: 8

damaged roofs had been replaced and issued payment for the depreciation originally withheld on the roofing loss, but without any payment for overhead and profit. Without any inspection or investigation whatsoever, National Surety refused to pay for the claimed interior damage, the claimed temporary repairs and mitigation costs, and the claimed overhead and profit. National Surety has also failed and refused to appraise the remaining dispute concerning the amount of the interior loss.

34. National Surety's refusal to submit the dispute concerning the amount of the interior loss to appraisal is a breach of the Policy. There are no disputed coverage issues. As it relates to the interior damage, the only disputed issue is the amount owed by National Surety to Volunteer Properties for the damage. There is no reasonable coverage dispute, and the interior damage claim is appropriate for the appraisal process as set forth in the Policy.

35. National Surety has not provided a reasonable or justifiable basis for refusing to honor Volunteer Properties' appraisal demand concerning the interior damage. Further, National Surety has not provided a reasonable or justifiable basis for refusing to pay Volunteer Properties' claim for overhead and profit, temporary repairs, and interior damage.

36. National Surety's refusal to pay the money and benefits due and owing Volunteer Properties under the Policy and refusal to submit the claim to appraisal has caused Volunteer Properties to seek legal counsel and to initiate this Complaint to recover the insurance proceeds and/or other Policy benefits to which Volunteer Properties is entitled.

## CAUSES OF ACTION

### Count I – Breach of Contract

37. The allegations contained in paragraphs 1-36 of this Complaint are incorporated herein by reference as if set forth verbatim.

38. The Policy issued by National Surety to Volunteer Properties is a binding contract, and is supported by valid consideration.

39. National Surety is in total, material breach of the Policy, and National Surety is liable to Volunteer Properties in the maximum amount allowed by the Policy for the Loss, less payments previously made. Specifically, National Surety breached its contract with Volunteer Properties by its failure and refusal to fully and promptly pay the amounts owed to Volunteer Properties as a result of the Loss as required by the terms of the Policy, including but not limited to National Surety's refusal to pay Volunteer Properties' claim for: (a) contractor overhead and profit; (b) temporary repairs; and (c) interior damages. National Surety also breached its contract with Volunteer Properties by refusing to submit the dispute concerning the amount of the interior damage loss to appraisal and by refusing to honor the Appraisal Award.

40. As a result of National Surety's breach of contract, Volunteer Properties has sustained substantial compensable losses for the amounts claimed under the Policy, as well as money damages for economic losses, and other numerous and assorted incidental and consequential damages.

41. National Surety is liable to Volunteer Properties for its losses and damages.

WHEREFORE, as a result of the foregoing, Volunteer Properties would respectfully request that this Honorable Court award a judgment against National Surety as follows:

A. For an Order requiring that National Surety honor the Policy and submit the disagreement concerning the amount of the interior damage loss to appraisal as properly demanded by Volunteer Properties;

B. For compensatory damages not to exceed $300,000.00;

C. For all costs incurred by Volunteer Properties as a result of this action;

D. For pre- and post-judgment interest; and

E. For such other further and general relief as this Court deems just and equitable.

## IV. JURY DEMAND

Volunteer Properties demands a jury.

Respectfully submitted,

**GILBERT RUSSELL McWHERTER PLC**

*/s/ J. Brandon McWherter*_____
J. BRANDON MCWHERTER #21600
bmcwherter@gilbertfirm.com
CLINTON H. SCOTT #23008
cscott@gilbertfirm.com
*Attorney for Plaintiff*
101 N. Highland Ave.
Jackson, Tennessee 38301
Telephone: (731) 664-1340